CONTINENTAL INS. CO. OF CITY OF
NEW YORK et al. v. JOHNSON
et ux.

No. 6393.

Court of Civil Appeals of Texas. Texarkana.
Oct. 28, 1948.

Rehearing Denied Nov. 25, 1948.

Chilton Bryan, of Houston, and Brachfield, Wolfe & Williams, of Henderson, for appellants.

Gladney & Stephen and E. C. Wellborn, all of Henderson, for appellees.

HARVEY, Justice.

Freeman Johnson and wife sued the Continental Insurance Company of New York, the Reliance Insurance Company of Philadelphia, and the Piedmont Insurance Company of Hartford on insurance policies issued by said companies covering a residence in Henderson, Texas, owned by Johnson and wife, which was destroyed by fire on May 22, 1947. At the close of the testimony in the case the court instructed the jury to return a verdict for the plaintiffs against the defendants in the aggregate sum of $5,000, from which action of the court the defendants have prosecuted their appeal to this court.

Appellants interposed a defense to appellees' suit upon the ground that the policies were written to cover the residence while occupied by appellees as their dwelling, and that they changed the occupancy from "owner" to "tenant" without the knowledge of the insurance companies and thereby materially increased the hazard, in violation of the terms of the policies in question. In addition, appellants alleged that the parties, either in person or in collusion with other

parties, procured the destruction by fire of the building covered by the policies, and that by reason thereof such policies were rendered void. Appellants urge the proposition that there was sufficient probative evidence introduced by them in the trial court as to require a submission of the issues pleaded by them for a determination by the jury, and that it was error on the part of the court to instruct a verdict in favor of appellees.

■ It is a well established principle of law in this State that if there is any evidence in the record of such probative force as would justify a finding in favor of the party against whom a verdict was directed it is reversible error for the trial court to instruct a verdict in the case. Also, the rule is well settled that in passing upon a motion to direct a verdict the trial court must presume as true all testimony that is favorable to the party against whom the instructed verdict is sought. In this state of the record, the only matter for determination by this court is whether or not there was evidence of such probative force as to present issues of fact to be passed upon by the jury in the case, and whether or not a favorable answer to such issues would have entitled the parties against whom the verdict was directed to have had judgment entered in their favor.

The policies herein sued upon contain the following provisions:

"This entire policy shall be void if whether before or after a loss the insured has wilfully concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof. * * *

"Unless otherwise provided in writing added hereto, this company shall not be liable for loss occurring: (a) While the hazard is increased by any means within the knowledge and control of the insured, provided that such increase in hazard is not usual and incidental to the occupancy herein described."

The occupancy described in the policies was "Occupancy dwelling—owner." Appellants rely upon Art. 5043, R.C.S. of Texas, 1925, as amended, which provides that the question of whether or not misrepresentations made by a policy-holder were material to the risk or contributed to the event on which said policy became due and payable are issues of fact to be determined by the court or jury trying the case.

■ With respect to the point presented as to whether there was sufficient probative evidence to create an issue of fact to be passed upon by the jury, appellants quote the testimony given by Freeman Johnson in his deposition taken prior to the trial in which he used this language: "He was giving me a $1 a week when I was there, but I decided to rent him the house, and he was supposed to pay me $3.00 per week." Appellants' attorney then said to Johnson, "That would be approximately $12 a month for the whole house," and Johnson answered in the affirmative. At another place in his deposition, in reply to a question as to who was in the house at the time of the fire, Johnson answered: "The report I got was the fellow I rented it to was there, which was Sam Singleton." On the trial of the case, Sam Singleton, a witness for appellants, was asked the question by the attorney for appellants: "When he left and rented the place to you, he turned it over to you to occupy?" To this question Singleton replied: "To take care of it." There was other testimony given by the witness Singleton to the effect that Johnson told him he was moving and was going to leave the house with him. Johnson testified on the trial that in March, 1947, he let Singleton have a room in his home; that at that time Johnson's children were at home with him, and a divorce suit was pending between Johnson and his wife at the time. Further, his children moved out about a month after Singleton was rented a room in the house; that in April, 1947, Johnson was having some trouble with neighbors and got a room in the country, where he intended to stay until his divorce case, which had already been set for trial, was disposed of; Johnson set no definite time to be gone, nor did Singleton understand he was to be gone for any definite period; that all of Johnson's furniture, kitchen utensils, and some of his, his wife's and children's clothing was in the house; that Johnson retained a key to the house and had the right to enter at any time he wished to do so. It seems that the preced-

ing facts were not controverted. Appellants assert that Johnson and Singleton in using the word "rent" contradicted other evidence given on the trial as to whether the whole house had been rented to Singleton in the capacity of a tenant. We are of the opinion that in as much as the facts outlined are not in dispute, it became a question of law for the trial court to determine whether or not the relation of landlord and tenant existed between Johnson and Singleton by reason of those facts. Even though Johnson used the word "rent" in describing his transaction with Singleton, it was within the province of the court to pass upon the significance in its relation to the facts adduced. 32 Am.Jur., page 34, Sec. 9. In the instant case, Johnson kept a key to the premises with the right of entry at any time he wished, and the furniture was left in the house, together with certain clothing and kitchen utensils; Singleton did not have the exclusive possession of the house and premises, which is an essential element in the creation of a tenancy status. Brown v. Johnson, 118 Tex. 143, 12 S.W.2d 543. It is true that a jury would have had a right to disbelieve testimony of Johnson, an interested witness, if issues had been submitted to them; however, they would not have had the right to have made a fact finding that the relationship of landlord and tenant existed between him and Singleton without evidence before them upon which to predicate such a finding.

■ Assuming that Singleton had rented the entire house from Johnson, in view of the part of the policy hereinabove quoted, there is no evidence in the record indicating that a change in occupancy of the house at the time of the fire increased the insurance hazard in any manner not usual and incidental to the occupancy described in the policies, and existing at the time the policies were issued. The agent of two of the companies that issued the policies testified that a higher rate is charged for tenant occupancy than vacancy; that the premium charged for tenant occupancy is greater than that for owner occupancy. This witness stated further that it did not necessarily follow that there is a higher risk where there is a vacancy than where there

is tenant occupancy. Under the facts presented it was not shown, assuming that there had been a change in occupancy, that there was an increase of hazard. 24 Tex. Jur., p. 125, Sec. 391; Dixie Fire Ins. Co. v. Henson, Tex.Civ.App., 277 S.W. 756; Id., Tex.Com.App., 285 S.W. 265.

■ The evidence introduced on the trial of the case relating to the defense of arson may be summarized as follows:

"At the time of the fire Johnson and wife were separated and a divorce suit was pending; that a division of the community estate was asked for in such suit, it being alleged that the real estate, of the value of $1800 to $3000, was incapable of partition and that it should be converted into money for the purpose of being divided between Johnson and his wife; that $3,500 of the insurance was procured eight days before the house was destroyed by fire, which appellants assert was an over-insurance; that just prior to the fire Johnson removed a substantial part of the furniture from the premises; that the origin of the fire, which happened about 11 o'clock at night, was unknown and unexplained; that Johnson's wife left the insured premises April 28, 1947; that Johnson was seen in town at the venetian blind factory where he had formerly worked, at about 10 o'clock in the morning. Johnson testified that he removed furniture he had bought from local merchants and that he returned this unpaid-for furniture to them.

Without discussing the undisputed testimony given by Johnson in explanation of certain portions of the evidence above referred to, we are of the opinion that the facts enumerated are not sufficient to present the issue of arson. The fact that Johnson was not staying at home at the time and was separated from his wife; that he had returned unpaid-for furniture, and that he was in town on the morning of the unexplained fire that night did not indicate that the fire was not of accidental origin. Prior to the issuance of the two policies in question totaling $3500, Johnson had carried $5,000 insurance on his house; when some of his insurance expired he was unable to renew it. Later, he contacted the insurance agent, who inspected his

house in order to ascertain its insurability in the sum applied for, which amount was approved. The court correctly instructed a verdict upon the facts outlined, the evidence being insufficient to present issues of fact to be passed upon by the jury.

The judgment is affirmed.